UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JASON D. PENNINGER,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>INDIANA DEPARTMENT OF<br>CORRECTIONS *et al.*,<br><br>　　　　　　Defendants. | CAUSE NO. 3:19-CV-295 DRL |

## VOIR DIRE

　　Good morning, ladies and gentlemen. I am Judge Damon R. Leichty. I welcome you this morning as the panel from which a jury will be selected for the trial of this case.

　　Before we begin, I want to take a moment and emphasize the importance of our gathering this morning. A jury trial is one of our most revered rights in the United States. So important it is, the United States Constitution enshrines the right four times—in Article III and in the Fifth, Sixth, and Seventh Amendments.

　　By appearing here today, you are exercising your individual rights. You are upholding the very foundation of our Constitution. Most countries don't have jury trials. A jury trial makes us unique—it helps define us as Americans. "Representative government and trial by jury are the heart and lungs of liberty," John Adams once said, so you breathe life into our country every time you serve. The court thanks you for your time and hopes that performing this role brings you pride.

　　As you know, the COVID-19 pandemic has affected all areas of our lives, and that includes how this courtroom operates. The court continues to monitor the status of the pandemic and has been adjusting its protocol based on the most up-to-date guidelines. Please exercise reasonable care. Our goal is to promote the cause of our justice system while ensuring everyone's safety.

I now have the privilege of introducing you to some of the people who will be involved in this trial. Seated here in front of the bench on my left is Debra Bonk. She is the court reporter. Her job is to take down everything that is said during the course of this trial. That includes the jury selection portion of the trial. In a few moments, we will be asking some of you questions about your qualifications to sit as jurors in this case. We ask that you speak up clearly so that Ms. Bonk can hear your answers; and, if I do not call you by name, please state your name along with your answer so that her notes make sense.

The woman seated to my right is DeAndra Kirkwood. She is the deputy clerk for this courtroom. Also to my right is Dalton Nichols, who serves this court as a law clerk. Seated throughout the courtroom in the blue blazers are the court security officers. If any of you have any problems that arise during the course of the trial, let the officers know, and they will inform me, and we will try to handle the problem in that way.

I will now introduce you to the parties involved in this trial. Mr. Jason D. Penninger is the plaintiff, and he is representing himself. Lieutenant Anthony Watson is the defendant, and he is represented by Carly Brandenburg and Julia Kwait.

We anticipate that this trial will take three days to complete, beginning today, February 28, and ending Thursday, March 2. I will make every effort to move this case along promptly.

This is the procedure by which some of you will be selected as jurors in this case. First, you will all be asked to take an oath or affirmation that your answers will be truthful. Following that, I will address a number of questions to all of you as a group, and I may ask some of you follow-up questions based on the questionnaires that you filled out. I will also ask you questions about your views on some issues that may be involved in this case and that might affect your evaluation of the evidence. Your only obligation is to answer questions truthfully.

The questions I ask are not intended to be offensive, overly personal, or prying. The parties in this case have a right to have this case tried by qualified jurors who will, without bias or sympathy, objectively hear and decide the issues to be tried, and render a verdict solely on the basis of the evidence presented at trial, and the law applicable to the case as given by the court. My questions are designed to ensure that a jury is selected of persons who can fairly and honestly do the job of jurors.

In addition, the parties will be allowed to exclude a limited number of people without offering a reason. They do not have to tell you the reason; they do not have to tell me the reason; they do not even have to have a reason. You should not be offended if you are excused for no apparent reason.

At this time, it is necessary for you to be placed under oath. Listen carefully as Ms. Kirkwood administers the oath; and remember that we know very little about you, and that we depend upon the answers you give to determine whether you are qualified to serve as a fair and impartial juror in this case.

1.

Are there any among you who, for whatever reason, cannot take an oath?

[*oath administered*]

There are no right or wrong answers to the questions I will ask. We all have different experiences, perspectives, and opinions, and I do not expect anything from you as to what your answers ought to be. Keep in mind that your only obligation is to answer truthfully. When you need to answer, please raise your hand and then I will direct you to the microphone at the right time so that the court may hear you. If you do not understand a question or cannot hear me, please let me know. Please let me know if for any reason you are uncomfortable with answering a question publicly, because if so, then we can address your response privately through a bench conference with counsel and parties. In that event, I will give you special instructions to follow.

2.

This trial is anticipated to take three days to complete, starting each day at 9:30 a.m. and concluding around 5:00 p.m. Though I understand this may be of some inconvenience to many of you, we cannot let good jurors go for simply that reason. That said, would this schedule present any undue hardship to anyone?

[*If yes*] Would the scheduling conflict prevent you from paying attention to the evidence introduced? Would it keep you from being able to serve in a fair and impartial manner, putting personal feelings aside?

3.

Do any of you suffer from problems of hearing or sight that would keep you from seeing and hearing the witnesses as they testify from this witness stand, if you were sitting in the jury box in the back?

4.

Do any of you suffer from any physical problems that would keep you from sitting in the jury box and devoting your full attention to the proceedings for as long as two hours at a stretch?

5.

Does anyone have concerns serving on a jury in light of COVID-19? Do you have any health issues that cause additional concern? Would your concerns affect your ability to serve fairly and impartially on a jury?

6.

[*Explanation of Case*]

This is a civil case brought by Plaintiff Jason Penninger against Defendant Lieutenant Anthony Watson.

The parties will do a fine job of explaining their legal and factual arguments to you, but I want to explain a little bit about the case so you will understand what you will be asked to do if you are chosen as a juror.

On April 7, 2017, Jason Penninger was an inmate at the Indiana State Prison. Lieutenant Watson worked as a correctional officer at the prison. During this time, a fire broke out in the cell of another inmate. Mr. Penninger claims that Lieutenant Watson violated his Eighth Amendment right against cruel and unusual punishment. Mr. Penninger says Lieutenant Watson was deliberately indifferent to the serious risks posed to him by the smoke and fire in his cell block. Lieutenant Watson denies this claim.

I'll tell you more about the law after we've chosen a jury. At the end of the trial, the jury will have to decide whether Mr. Penninger has proven that it is more likely than not that Lieutenant Watson violated his Eighth Amendment right. In making this decision, the jury will be expected to consider all of the evidence in the case.

7.

Do any of you remember reading or hearing anything about this case?

8.

Do any of you know the plaintiff, Jason D. Penninger?

9.

Do any of you know the defendant, Lieutenant Anthony Watson?

10.

Do any of you know the attorneys involved in this case, even on a casual basis? [*Carly Brandenburg and Julia Kwait*].

Please describe the relationship/acquaintance. Do you believe that your relationship might cause you to favor one side or the other in this case? If yes, please explain.

11.

Do any of you know any member of my judicial staff?

12.

Do any of you know another person seated in the jury panel?

13.

In addition to the parties and the attorneys, there are other persons whose names will be mentioned during the trial. Some of these persons may testify as witnesses; others may simply be mentioned without testifying. I am going to read to you a list of persons whose names may be mentioned during the trial. Please listen carefully to the list as I read it, and when I am done I will be asking whether any of you know or think you may know any of the persons on this list:

- a. Promise Blakely
- b. Jeremy Dykstra
- c. Timothy Redden
- d. Brandon Ennis
- e. Daniel Milne
- f. Monica Wala
- g. Margaret Devore
- h. David Morris
- i. Ryan Statham

Do any of you know or think you may know any of the persons just named? Please describe the relationship/acquaintance.

14.

Have any of you or your immediate family members ever worked at the Indiana State Prison in Michigan City, Indiana, or with any other law enforcement agency, whether as a police officer, sheriff, deputy, or confinement officer, or in any other capacity?

15.

Have you or any members of your immediate family had any negative experience with the Indiana State Prison or any other law enforcement department, police officer, or corrections officer?

16.

Have you, or has anyone close to you, ever been confined in a jail? If so, do you believe this fact would make it difficult for you to sit as a fair and impartial juror in this case?

17.

A person who is convicted of a crime and sent to prison loses a lot of rights, but the United States Constitution gives everyone, including prisoners, the right to be free from cruel and unusual punishment. That includes punishments issued by courts, but also includes punishments by people who work in prisons. That is the law of the United States and has been since 1791. Are there any of you who would be unable or unwilling to follow that law as you decide this case?

18.

Would any of you tend to assign more credibility to the testimony of a law enforcement officer simply because he or she is or was a law enforcement officer?

19.

Would any of you tend to assign less credibility to the testimony of a prisoner simply because he or she is a prisoner?

20.

Many Americans of good will have different opinions about our country's criminal justice system. This is not the time for a debate on these views. My question is only this: do any of you hold such opinions so strongly that you would not be able to decide this case on the basis of the law as it is today—as I will explain it to you at the end of the case?

21.

Have any of you personally been in or been affected by a fire in a house or other building?

22.

I would like each of you to briefly introduce yourselves. Please rise, come to the microphone, tell us what city or town you live in, what you do for a living, a little bit about your family, and what you like to do with your time.

[*ask questions based on individual questionnaires*]

23.

Would you surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of your fellow jurors or for the purpose of returning a unanimous verdict?

24.

Do you believe that a defendant in a lawsuit must have done something wrong?

25.

In a civil case, the plaintiff goes first. Will you all promise that you will wait to hear all the evidence, including the defendant's evidence, and maintain an open mind, before you reach any conclusion about who, if anyone, is responsible?

26.

It is your obligation to follow my instructions about the law, whether you agree with the law or not. If you were to find that you disagreed with the law, you must still follow that law and reach a verdict by applying that law to the evidence. Is there anyone here who could not do so?

27.

Finally, it may be that you know something that we don't know that troubles you about your ability to be a fair and attentive juror in this case. If there is anything about *this* case, involving *these* claims, in a trial held *this* week, with *these* people, that troubles you about your ability to be a fair, impartial, and attentive juror, please raise your hand.

28.

[*Consider any follow-up questions from counsel to be asked of the entire venire.*]